Mr. Treloar. Thank you, Your Honor. May it please the Court. The jury in this case is found that the defendants do not infringe the asserted claims of the 805 patent and that the claims are anticipated and obvious. Those findings rest on an incorrect claim construction and on reading the key prior art reference to disclose claim limitations that it not only does not expressly disclose, but that are contradicted by what it does disclose. With the Court's permission, I'd like to turn to the claim construction issues first. The District Court construed a hot-rolled steel sheet to require a steel sheet that's been reduced to its final thickness by hot rolling and to exclude, as a result, sheets that are hot rolled and then cold rolled. That construction cannot be reconciled with the intrinsic evidence. The starting point should be the claim language. The Court's construction imports into the claims a limitation, namely reduced to its final thickness, that's not found anywhere in the claim language. The claim says nothing to suggest that the hot-rolled sheet it describes must be hot rolled to its final thickness. To the contrary, as the Court held and defendants don't dispute, the claims are product-by-process claims and hot rolled is a source limitation. That means that the sheet must be produced by a process that includes hot rolling, but it doesn't exclude sheets that also undergo additional processing steps like cold rolling. I think that's underscored by the fact that Claim 1, which starts out by referring to a hot-rolled sheet, thereafter uses the terms sheet and steel sheet to describe the invention that it claims. Each of the dependent claims also uses the term steel sheet. Now, as defendants repeatedly point out in their brief, the term sheet and steel sheet refer collectively to sheet produced either by hot rolling alone or by hot rolling followed by cold rolling. Moreover, the claims also use the term comprising, which indicates that hot rolling is necessary, but other steps are not precluded. I think the specification points very firmly to the same conclusion. It repeatedly states that the steel sheets of the invention have been hot rolled and include hot rolled sheets that are then cold rolled, which means that the sheets described as hot rolled in this patent are not necessarily hot rolled to their final thickness. Suppose you're right about this. What about the 1500 limitation, which both the specification and the article appear to suggest is equivalent to the high limitation or very high limitation? Well, the claim term is very high mechanical resistance, and the claim doesn't include any numerical limit. What does very mean? What meaning do you attribute to the word very? What's very mean? Well, what the district court found is that... What does the dictionary say very mean? Frankly, I haven't looked at the dictionary, but I assume it means... Lots. Lots, yeah. Now, what the district court said is that very high mechanical resistance or very high is not a term of art. It does not have a specific meaning in the art. So now if we look at the specification, what the specification says is the purpose of the invention is to produce a hot rolled sheet, hot or cold rolled sheet of a desired thickness, etc., that makes it possible to achieve a mechanical resistance in excess of 1000 MPa. Yeah, it's 1000 to 1695, isn't it? Well, not in the... Right, right. The specification describes different levels. Well, the district court also pointed out sort of an odd limitation, because anybody that takes this particular type of steel and subjects it to this particular type of pressure is going to get resistance, right? Well, they're going to get some, but they're not... And this is an important point. Right, but the reason why the district court had to put some numbers on this is because the claim is meaningless otherwise, because it's only infringed in the eye of the performer of the service. Right, oh, I... It doesn't make it very... Yeah, I misunderstood your question. No, sir, we're not disputing... We're not arguing... So we have an indefinite claim, okay? A claim that needs to have something breathed into it so it's not indefinite. And the district court breathed a lot in and said, well, you say very, the inventors say very in their written agreement. Why is that incorrect? It's... Why should it be limited down to 1000? Okay, here's why. The specification says, in its statement of the purpose of the invention, this is A136, column 1, lines 37 down to 44. The purpose of the invention is to produce a hot or cold rolled steel sheet, etc., which makes it possible to obtain a mechanical resistance in excess of 1000 MPa. Is 1500 in excess of 1000? 1500 certainly is. We don't dispute that 1500 is very high. But that part of the specification doesn't use the words very high. Right. No place in the specification uses the words very high. And then when the specification talks about 1500, it says, it refers to it as high or substantial, and it says a high mechanical resistance or a substantial mechanical resistance may exceed 1500, not must exceed 1500. So saying that it can be very high and it may... But that is meant, may, we're not interpreting, the district court didn't interpret it to require that it exceed 1500, that it be 1500, right? I think her construction, no, I think her construction was of more than 1500 MPa. The construction is at least 1500. Okay. No, at least. Okay. And that starts at 1500. Right, right. I don't see how this is inconsistent with that, and the language seems to support that, because it suggests that it can be greater than 1500, but that implies that it's at least 1500. Oh, I don't think it does imply that. Not when you have a prior statement that says the purpose of the invention, and the invention is a sheet with, as the claim says, very high mechanical resistance, is to produce a sheet with more than 1000. I think the specification is telling you what very high mechanical resistance is used in the claims means. And where is the 1500 in the spec? The 1500 is in column two, is one place. Okay. Lines 50 to 56, I believe. And that's high mechanical, that's high, right? Right. And did you say substantial was also there? Substantial was also there. I think that's column three, about line 52. Okay. So we have high and substantial and very, right? Very is the word in the claim. I would be inclined to think that I would associate high and substantial with very, whereas if I have a reference to 1000 that isn't calling itself high or very or substantial. I'm using the words substantial and high in the spec to ask whether they don't teach me something about what very means. Right, I understand. But I think you can't read those passages in isolation from what the specification has already told you the purpose of the invention is. What language are you relying on to the purpose of the invention? I'm relying on the passage at column one. It's about line 41, 42. Yeah, down in that neighborhood. Is there something in the record that shows us industry standards? There are no industry standards. I mean, as I mentioned, the district court found that very high mechanical resistance is not a defined term. There's not a scale somewhere that says high is up to here and substantial is this and so on. And, in fact, the extrinsic evidence, which we don't think you need to go to, but the extrinsic evidence says that people in the ARC viewed ultra-high strength steel as about 700 to 800 MPa and understood ultra-high to be stronger than very high. What about the allegedly anticipatory reference? It refers to 1500 throughout, doesn't it? It does refer to 1500. It's listed as being hot, right? Yes, it does, which isn't surprising since the reference was written by one of the inventors. It's not surprising you would have used the same terminology. But it's describing a particular product, and I don't know how you import that into the specification, particularly where the district court found and nobody disputes that very high is not a term of the ARC, and nobody has suggested that high or substantial is either. So I think that if you start with that statement of the purpose of the invention, and the purpose is to produce a sheet with more than 1,000, I don't know how you can read the claim, which is, after all, defining the invention, to require 1500 as the minimum. Can I ask a question on a different point? Sure. As I understand the lay of the land on the obviousness issue is that there's no—the claim construction error doesn't really affect the prima facie case. So the question here is whether or not your client—let's assume that I agreed with you that the claim construction was wrong on the hot roll. Okay. Now, that means that I've got to go—and let's assume I agreed with you that the claims were not anticipated. Although your claim may not be infringed because they don't meet the 1500, your patent's at stake. Right? So when I look at the 103 issue, it looks to me like the jury said, looking at it as though hot roll's deal was always involved, the claims are obvious because there's no commercial success statement. Right. If they're obvious—if the claim is obvious for that purpose, why isn't it equally obvious with regard to a claim construction that says, well, it's hot rolled and then cold rolled later to a desired thickness? Because if you construe the claim— Why do I care about the—in essence, why do I care about the so-called secondary success of the product that's hot rolled and then cold rolled? You care about it because it shows that the invention, properly defined, was commercially successful. In fact, it was copied by the— Right, right. But your claim, as the district court pointed out, interestingly enough, whatever it was, I had it 24. In the claim construction decision, she said, well, I realize that you've conceded no infringement on the claim construction. And she said, well, maybe you're wrong on that. Because this steel, right, the accused steel was hot rolled. Yeah. It was hot rolled. So if it's hot rolled to the degree element, it's infringing. We don't care what happened later. Right. And so why don't I look at the patent as though that's what it's covering? If the patent is obvious for one purpose, why isn't it obvious for the other purpose? It isn't obvious for the other purpose because if you can screw it properly, it covers hot rolled sheets that are also cold rolled and coated. Yeah, but I mean— Which is the commercially successful— If you go back and look at footnote 6 on page 11 of A99, which is in the claim construction thing, the judge who expressed some remorse having decided to try this case in an odd way on the concessions, the judge says, well, guess what? My construction doesn't necessarily preclude a showing of infringement if they show that this steel was hot rolled to a certain degree, even though it was later cold rolled. Because your patent reads on steel that is hot rolled, even on your interpretation, hot rolled, and maybe later on he decides to cold roll it because he wants thin metal. Right. If he doesn't want to cold roll it, he's still infringing the claim, right? If he meets the other limitations. If he meets the other—correct. And the existence of steel that was hot rolled and then later on cold rolled and being very commercially successful is irrelevant, isn't it? No, it's not irrelevant because— Why not? Because what the judge held, and I think you need to look at this footnote recognizing that what she held is that we could not establish literal infringement by sheets that are hot rolled and then cold rolled. This case went to the jury only on an infringement under the doctrine of equivalence. Well, look at this. The court construction does not necessarily preclude the possibility of defendants infringed by producing by hot rolling a coated steel having the claimed properties, regardless of subsequent processing steps. Right. Now, I think she's saying one of two things there. One is she's alluding— I mean, you gave it up with your concession. Well, I'm not sure we gave it up because I don't think she was giving us anything here, Your Honor. I think one thing that she— Well, you conceded there's no infringement, no literal infringement. Well, she determined that there was no literal infringement, and we haven't appealed that. You said if the opposite side prevails on its claim construction on hot roll, right, then you said we agree there's no literal— We have not challenged that. Correct. And she's just saying to you, you gave up more than you had to. No, I don't think that she is. I think that this goes—well, because she held already— Don't you think you're patent—let's assume Clevenger Steel Industries decides to hot roll some steel exactly to the specifications, you know, so it has all this resistance and everything. Right. And I, instead of making a part, you know, that has to be, you know, thinner metal for something, I don't care about the thickness of it, so I don't cold roll it. I'm infringing, aren't I? If you've coated it already. Yeah. And then you can't—and then you can't—after you've coated it, you can't cold roll it. So I think it's important to understand the process here. You hot roll, then you cold roll, then you coat. The record is very clear that you can't hot roll, coat, and then cold roll because it messes up the coating. It doesn't work anymore. So that's why I think this footnote doesn't mean what Your Honor may be suggesting that it means. I'm just saying what you do is you make some hot roll steel and you coat it. Right. Then you're infringing. That's right, and they don't do that. Right, but in terms of whether or not the claims are obvious, if you're asking whether a claim that reads on hot roll steel, okay, that's coated, right, then why do I care about the commercial success of hot roll steel that is cold rolled and then coated? Because that then, too, is within the scope of the invention. It's another embodiment of the claim. It's like a dependent claim. Well, it's not a dependent— A dependent claim is obvious. Why do I—isn't the game over? No, it isn't over because the— Why not? Because the claim to just the hot roll sheets alone was never properly assessed because by construing it as she did, she excluded all of the commercial success evidence, the copying evidence, evidence of surprise in the industry, etc. And that, as the court recently held in the Mince case and the Cyclobenzaprine case, you can't analyze the prior art and then sort of divorce from the commercial success and other objective evidence of non-obviousness. Let me ask you back up for a moment so I can understand where we are. Suppose we were to agree with you that hot roll doesn't preclude later cold rolling, that construction. But we were to disagree with you with respect to the very high mechanical resistance and say that the 1500—at least 1500 construction was correct. Does that mean that there's no infringement? That would mean that there is—there's no infringement as to some of the products. Some of the accused products have mechanical resistance below 1500. Some have above 1500. What was the nature of the concession? I'm sorry. Was there a concession here? The district court seemed to think there was a concession. On the mechanical resistance point? Just a concession as to the products. Was the— Oh, I think the concession is two-stepped. I think the concession was simply that we conceded that their products, the accused products, were hot rolled and then cold rolled. They were not hot rolled and coated products alone. That was the only concession. And then to answer your question, Your Honor, some of the products have mechanical resistance below 1500. Some have above. So there would have to be a remand to determine which ones were infringing. Correct. Okay. With respect to the obviousness question and the same assumption as to the claim construction, does the commercial product have a mechanical resistance in excess of 1500 or some of it's below and some of it's above? Our commercial product has a mechanical resistance of 1500 or better. In fact, it's called Usabor 1500P for precisely that reason. And the competing products, you know, they're the accused products. Some are above and some are near but below. So I think as to obviousness, if our position on the claim construction of hot rolled is correct, there would need to be a new trial on obviousness because I don't think the mechanical resistance construction enters into that at all. Any further questions? Well, do you get to retry the question of whether the forging is the same as, you know, the difference between the old cold forging and the cold stamping? Yeah, I think that would be. Why would you get to retry that? Well, because the, and again, as the court recently made clear in Mintz and the cyclopenzaprine case, you have to have the properly defined claims and then the objective evidence has to be considered by the jury together with, or any fact finder, together with the prior art evidence. So I think you have to present the jury with the whole package because, you know, and here this is a perfect example of the hindsight sort of thing. You have this 40 or 50 year old patent that nobody had ever thought to use for hot stamping. I don't understand you to be, at some stage in your brief you said, well, wait a second, I'm not worried about the prima facie case anymore. I'll find it. Well, you agree the claim construction doesn't affect the prima facie case, it just affects the secondary consideration. Yeah, I think that's right, Your Honor, because the analysis of the prior art is the same, whether it's hot rolled or hot rolled and then cold rolled. What about whether to combine the references? I'm sorry? Whether to combine the references. Well, I think that would need to be retried, again, in the context of a record where the jury can properly consider the objective evidence. The secondary consideration. Secondary consideration, not like objective evidence. That's part of the prima facie case. That's part of the case of whether or not there's a prima facie case of obviousness. What I'm trying to get at is whether or not there needs to be. It doesn't have anything to do with motivation to combine the claim construction, right? Oh, I think it sheds light on the motivation to combine. Have you argued that in your brief? I don't recall that. Well, I don't know that we phrase it exactly that way, but what we have said, Your Honor, is that you can't analyze the obviousness, including the prior art, divorced from proper consideration of the objective considerations, secondary considerations. So the whole issue. It's a different argument. I'm sorry? It's a different argument. Oh, I don't think it's a different argument, Your Honor, because, again, as we pointed out in the Mintz case and Cyclovenzaprine, and Mintz was decided after we submitted a 20HA letter on that. Cyclovenzaprine is discussed in the reply brief. The court makes the point that you don't proceed with this prima facie case and then you make a determination on that and then you see whether it's rebutted. It's a unified analysis. Okay, I think we're out of time. We'll give you three minutes for rebuttal. Thank you, Your Honor. Thank you. Mr. Sykes? Your Honor, my name is Christopher Sykes. I represent AK Field, but I'll be arguing on behalf of all the respondents. If it would be helpful to the court, let me try to take up first the question that the court came to last, which is whether or not claim construction has any impact on the obviousness of verdict at all. And we believe the answer to that is no, and it's no actually for two reasons. This is a jury verdict in which the jury found claims directed to hot-rolled steel sheet obvious. That is sheet that's hot-rolled to final thickness. What ArcelorMittal is attempting to do with their proposed new claim constructions is broaden the claim. The subject matter that the jury found to be obvious would remain within the claim. This court has held repeatedly it is a bedrock principle of patent law that if a claim reads on any obvious subject matter, the claim is invalid for obviousness. The jury found the pre-coded, coded hot-rolled steel sheet obvious. The claim under their claim construction would continue to read on that. They argue solely that by expanding the claim, they've got secondary considerations, objective considerations is the term they prefer, relating to this cold-rolled steel sheet. But that's not enough to resurrect the claim because that evidence was before the jury. They got to introduce all their evidence. The jury rejected that evidence with regard to the hot-rolled steel sheet either because it was way too weak to overcome the very strong technical obvious. Let me tell you what my problem is. It seems to me that any commercial product is going to be different from the invention as described in the claims. It's going to have other features. They say that under a proper claim construction, and let's assume that they're right about the hot-rolled claim construction for a moment, what they're saying is, well, the fact that there's a comprising claim, that there's an additional step, and that the commercial embodiment includes that additional step that's not claimed doesn't disable the evidence of secondary considerations concerning that commercial embodiment as being relevant to the obviousness question. Now, why is that wrong? That's wrong because they're forgetting the fact that nexus, which is required here, whether it's commensurate with the scope of the claim is a fact question. The jury heard their arguments, but there was substantial evidence. But not under the correct claim construction. But there was substantial evidence that hot-rolled and cold-rolled products are separate products as a factual matter in the market, and that the hot-rolled coded product that they marketed failed. What the jury concluded is the secondary considerations relating to the cold-rolled product didn't have sufficient nexus to the hot-rolled product or sufficient weight to overcome obviousness. That conclusion stands. Imagine, Your Honor, that we... Well, how does that conclusion stand? The jury was told that the cold-rolled version of this wasn't within the scope of the claim. And imagine, for example, Your Honor, that you had a case in which you had an independent claim that covered hot and cold-rolled steel sheets, and then a dependent claim that covered just the hot-rolled, which is the independent claim we have here, the narrower, just hot-rolled. The jury finds that dependent claim obvious. That governs the obviousness of the independent claim, even though the independent claim has additional subject matter on it, because the jury found that narrower claim obvious and the independent claim covers that. This court held that expressly in the Callaway-Golf case. Now, in Callaway-Golf, they had opposite jury verdicts. So in your hypothetical, the jury has or has not received secondary evidence in this matter? Has received all the secondary evidence, as in this case, but they only were considering the dependent claim. Imagine the independent claim hadn't been asserted, just the narrower claim to the hot-rolled steel sheet. If it finds that obvious, the law is clear that independent claim is obvious as well. It has to be that way. Think about patent prosecution. I'll tell you why it has to be that way, because in my hypothetical, every commercial product has additional features to it that aren't covered by the patent. That's necessarily the case, right? Correct, Your Honor. Okay, so what they're saying is this commercial product has an additional feature, which is cold-rolled, and that may be that the cold-rolling is what is responsible for the commercial success. If that's the case, then there's no nexus to the claims. But they're saying, no, the evidence establishes that the hot-rolling and the coating is what's responsible for the commercial success, and that the cold-rolling is just an add-on feature that's not responsible for the commercial success. And they made that argument to the jury, and the jury found, as a matter of fact, that there wasn't sufficient nexus to the hot-rolled product. Even if there were a nexus to the cold-rolled product, that wouldn't make the claim valid. Well, there can't be a nexus to the hot-rolled product. The commercial success of a cold-rolled product has to be totally irrelevant to whatever a hot-rolled product is. To the contrary, Your Honor, the nexus depends upon whether the success is attributable to the patented features or not. So they were able to argue. They argued to the jury that the success of their cold-rolled product reflected non-obvious of the invention as a whole, and the jury rejected that and found hot-rolled... I'm a little confused. How were they permitted to argue that when the judge had ruled that the cold-rolled product  Because they were able... They argued that its success, nonetheless, reflected a non-obvious of the hot-rolled product, too, and the jury rejected that. And, in fact, the evidence that the hot-rolled product had failed, the evidence that the success that they claimed was years after they filed for the patent, the overwhelming evidence of technical obviousness overwhelmed any such argument. The jury considered their evidence. They considered the evidence and found no nexus. That lack of a nexus between the success of their cold-rolled product and the hot-rolled product remains. The legal question of expanding the fence of the claim doesn't change the factual question. That's why the patent office can examine independent claims and doesn't have to independently examine the dependent claims, because the narrower claims... The narrower claim is obvious. So must the broader claim. You can't have the broader claim be non-obvious and the narrow one be obvious. Here, the narrower claim, including consideration of their secondary considerations, has been found obvious. So you're telling me that Arcelor was permitted to introduce all their evidence of secondary consideration? That's correct. They may have not argued on appeal. They didn't argue below that there was any evidence excluded. They introduced their arguments. They made their... And the reason for this, actually, is very clear. This obviousness case had nothing to do with hot-rolled versus cold-rolled. It had to do with the obviousness of adding a coating before thermal treatment. We believe the Van Laurent prior art disclosed that expressly, but in addition, there is a French patent that specifically teaches coating with aluminum-silicon alloy coatings to protect steel sheet from high-temperature oxidation during hot forming. You put the two together, you have the entire invention. Van Laurent describes hot-rolled and cold-rolled sheets. There is no distinction in this technical obviousness case between hot-rolled and cold-rolled because the obviousness case turned on the obviousness of pre-coating, not hot-rolled versus cold-rolled. All that evidence came in. The jury weighed it all and found no nexus. They found the hot-rolled coated product obvious that will remain within the claim even under their claim construction. So the claim is obvious. How were they instructed on the secondary consideration? The jury's instructions are in the record, Your Honor, and they have not been challenged by Oxford. I understand they haven't been challenged. What did the judge tell them about secondary consideration? They were told that they could weigh them. It's on page A67. A67. It says, You should consider the objective evidence which may tend to show non-obvious claims at issue. And then it walks through what those are. But the trouble is that subsection 1 says commercial success or lack of commercial success of products covered by the asserted claims, right? So isn't that an instruction that if the product is not covered by the claims, they can't consider it? Well, actually, it says, If the commercial success is due to features of the product other than described in the asserted claims. This is at A68. So it's true that the jury might have found, there's a reason to think it would not here, under the wires case, that cold-rolled coated product maybe would have been non-obvious. But its conclusion, including substantial evidence that hot-rolled coated product failed, that hot-rolled coated product was obvious, stands regardless of the claim that includes additional subject matter. Even if Arthur and I were right, which we disagree with, that coated cold-rolled product was somehow non-obvious, and the prior hit them both equally, the coated hot-rolled product has been tried to a jury and found obvious, including all of this evidence that they have. And that the jury found that there was no nexus to the hot-rolled product. Remember, commercial success, all the secondary considerations have to be commensurate with the scope of the claim. Here there's a wide swath of the claim covering coated hot-rolled product, which has been found... Their argument is that they've got, if they went on claim construction, they've got a new product that they want to show the commercial success of that product. And your argument is, well, if a dependent claim is obvious, then an independent claim from which it depends. Correct. If you're right on that, then it doesn't make a difference. Correct. That's exactly right. And the fact that all... What's your best case for that proposition? We believe, for example, Callaway-Goff establishes that if a dependent claim is obvious, the independent one has to as well. And we think all of these cases involving review of jury verdicts, that you presume all the facts that are found. And the fact that, for example, Enrique Cao emphasized that you need secondary considerations to be commensurate with the scope of the claim. There has to be a nexus. And that's a factual determination. The jury here rejected any factual connection to the success of the coated cold-rolled product and the obviousness of the hot-rolled coated product. The hot-rolled coated product remains obvious. Coming to the infringement issue, do you agree with Mr. Trela that if we were to reverse on the hot-rolled construction and to agree with him on the hot-rolled construction but to affirm as to the 1500 construction that there would be some products that would then potentially infringe? Your Honor, there is evidence that some of the products have a mechanical resistance above 1500. I believe all of AK Steel's were below. I believe they had some evidence of some of the other products that were above 1500. That is correct, Your Honor. So let me come to the hot-rolled. Some of AK Steel's product was above 1500. None of AK Steel's product, as I recall, was above 1500. I think some of the other defendant's product was above, I think. So they didn't market that as high? They meet specs, Your Honor. And I believe, let me correct a mistake that I think that the Arts and Humanities Council made. You asked whether there's any specs. There actually is an industry specification in the record. It's the Ford specification. It said A, 6470 at 6472. And that defined the required ultimate tensile strength, which is what the patent calls mechanical resistance, to be 1500 megapascals. But that was... What is 1500? They refer to it as ultimate tensile strength. It's what the patent refers to as mechanical resistance. Ultimate tensile strength? That's the technical term for mechanical resistance. It's above 1500? It's 1500, correct, Your Honor. I'm not honest. Where do we find that in the record? That's at 6472, Your Honor. So the second volume... That says typical component properties are as follows. That's correct, Your Honor. That was the typical component properties for a hot-stand bore on steel. The clearer evidence, Your Honor, is, of course, the patent itself, which defines high... which describes high mechanical resistance as above 1500 megapascals. The patent's quite clear there. Let me turn, if I can, to the hot and cold rolled steel sheets. But the specs go on. The record shows that there are different specs for different parts and different pieces. Now... That's the spec that was in place at the time the patent was filed for in 1998. There are current specs in the record that have different... for different parts and different specs with different strengths. There's a trade-off between strength and ductility. Sometimes it's desirable to have a little lower strength to be a little more ductile, a little more able to bend and flex and not crack. So you can see specs at different levels. They are correct that very high mechanical resistance is not a defined term in the industry. But the intrinsic evidence and the reference to what does mean high in the context of bore-on-steel makes it clear that very high mechanical resistance is 1500. By contrast, the term hot rolled steel sheet is an extremely well-known, settled term in the steel industry. This is an old industry. It has terms of art that are settled. A person of ordinary skill in the art would know what hot rolled steel sheet means. And it would mean it was rolled to final thickness by hot rolling. We've cited a number of treatises, industry guidance. The court found in A96, there's no dispute over the meaning of the term hot rolled steel sheet in the steel industry. What happens if you want to order some hot rolled that's been cold rolled? What do you order? Well, cold rolled is actually an expensive step. I understand. It's hot rolled and there's cold rolled. Correct. Let's say you want to buy some steel that's been cold rolled to its final thickness after it was hot rolled. What do you ask for? You ask for cold rolled steel sheet. That's, for example, the AFCM specification. If you want sheet that is hot rolled and then cold rolled, you look at A424, you ask for cold rolled sheet, which states, defined in the ASTM 568, manufactured from hot rolled desiccated coils. The sheet actually comes out in long coils and it is cut to individual sheets by cold reducing to the desired thickness. The only way to buy cold rolled steel sheet is to buy sheet that was first hot rolled and then cold rolled. Okay, Mr. Seitz, I think we're out of time. Thank you very much. Mr. Traylor, you have three minutes. Thank you, Your Honor. Let me just touch on the last point, the hot rolled point, quickly. It may be the case that certain final products in the industry, when you say hot rolled sheet, it means hot rolled to its final thickness. It clearly cannot mean that in this patent because this patent says the subject of this invention is hot rolled sheets, which then may be further cold rolled to a desired final thickness. So as that term is used in this patent, it cannot possibly mean hot rolled to its final thickness. It can mean both under the terms of the patent. Is that correct? Yes, correct. It can mean hot rolled to its final thickness or hot rolled then cold rolled to its final thickness. Correct, Your Honor. Your argument in a nutshell is that comprising overrides industry practice? No, it's not. In terminology. It's not only that comprising overrides industry practice. It's that the entire text of the specification overrides the extrinsic evidence because it repeatedly says the hot rolled sheet of this invention may be further cold rolled, which means that hot rolled sheet, as used in this patent, has not been hot rolled to a final thickness. If comprising had been left out, you'd be out of luck. No, I don't think so, but I'm happy that it's there. Mr. Sykes is correct that there are two different things in the sense of, for example, import classifications. Yeah, although interestingly, when you look at the extrinsic evidence, and we cited this in our brief, and one example is in the treatise that they rely on at A372, cold rolled and cold rolled sheet are separate product categories. Coated sheet, which is what we're talking about, is a separate category altogether without regard to whether the sheet was hot rolled or cold rolled. So to answer the question about if I wanted to order cold rolled sheet, what would I order, depends on whether it's coated or not. So the extrinsic evidence doesn't get you to the court's claim construction. Now, on the obviousness point, first on the narrow versus broader claim issue, the problem here is that the narrower claim was not properly construed. Was any of your commercial success evidence excluded? Well, it was effectively excluded. We did put the evidence in, but here's what the jury was instructed. The jury was instructed, first of all, as the court pointed out, that commercial success and the other objective indicia are only relevant if the claims cover the products that you're talking about. The jury was also instructed at A50 that these claims cover only sheets reduced to their final thickness by hot rolling. In other words, not our product, not their product. The jury was further expressly instructed that USABOR 1500P, our product, is cold rolled to its final thickness. So they were told this product is not within the scope of the claims. So it was there, but they weren't allowed to consider it. Well, it was there, and frankly, it would have been an error for them to consider it under these instructions, I think. And also, the jury was told that defendant's products are cold rolled to their final thickness. That's at A43, A51, and A57. So, yes, the evidence was there, but under the instructions the jury was given, it could not properly consider that evidence.  Thank you, Your Honor. Thank you, Your Honor.